UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In Re:

CHARLENE HAMOOD,                                    Case No. 11-51804
                                                    Chapter 7
            Debtor.                                 Hon. Marci B. McIvor
_____/

AL and JENNY STANOWSKI,

            Plaintiffs,

v.                                                  Adv. No. 11-6536

CHARLENE HAMOOD,

            Defendant.
_____/

## OPINION GRANTING DEFENDANT'S COUNTER-MOTION FOR SUMMARY JUDGMENT AND DISMISSING PLAINTIFFS' COMPLAINT

For the reasons set forth below, this Court GRANTS Defendant's Counter-Motion for Summary Judgment and DISMISSES Plaintiffs' Complaint.

## FACTUAL BACKGROUND[1]

On August 24, 1993, John A. and Ramona Hamood entered into a land contract for the purchase of commercial property at the intersection of Sibley and Racho Roads in Brownstown Township, Michigan owned by Al and Jenny Stanowski. An unsigned

_____

[1]These facts were first set forth in the bench Opinion Denying Plaintiffs Motion for Summary Judgment under § 523(a)(2) and § 727(a)(5) issued on June 26, 2012.

Addendum was attached to the Land Contract.  The Addendum was entitled:

> ADDENDUM TO THE LAND CONTRACT
> between Al & Jenny Stanowski,
> sellers John & Ramona Hamood,
> His wife, Buyers.

The Addendum stated:

> If the Buyers Sell or Mortgage the existing premises the Sellers will give
> the Buyers a Warranty Deed in exchange for other properties on the following
> terms and conditions.
>
> a)    Give a second mortgage on the following properties:
>
> 1.    Lot 12 heritgage Oak Subn. As recorded in
> L. 199 pages 3, 4&5, Oakland County Records,
> ID # 115-20-456–04, Commonly known as 2145
> Clinton View Circle, Rochester Hills, Mich.
> the exchange shall take place simultaneously
> at the mortgage or sale of said Property.

The home at 2145 Clinton View Circle, Rochester Hills, MI is the residence of Debtor

Defendant Charlene Hamood and her husband, Jamal John Hamood.  The property is

subject to a first mortgage in the amount of $228,800 recorded on August 27, 1992.

In February 1995, it appears that Buyers, John and Ramona Hamood, decided to

mortgage the Brownstown Township property.  Pursuant to the terms of the Addendum,

they gave the Plaintiff sellers, the Stanowskis, a second mortgage on the Rochester

Hills property.  Because that property was owned by Jamal and Charlene Hamood,

Jamal and Charlene Hamood were required to sign the mortgage.  In addition to the

mortgage, multiple parties, including John Hamood, Ramona Hamood, Jamal Hamood,

Charlene Hamood, Ghassan Beydoun, and Ameena Beydoun, signed a promissory

note agreeing to pay Al and Jenny Stanowski $148,225 in monthly installments of

$1,375 with a balloon payment due on January 5, 1999.  The promissory note is dated

2

February 2, 1995.

On February 7, 1999, the Hamood/Beydoun parties who had signed the promissory note, with the exception of Ghassan Beydoun, filed a lawsuit in the Wayne County Circuit against the Stanowskis to determine the balance remaining to be paid under the promissory note. The Stanowskis failed to respond to the Complaint and a default judgment was entered against the Stanowskis.

Sometime later, the Stanowskis filed a motion to set aside the default judgment. In response, the parties entered into settlement negotiations. On February 4, 2004, the Hamood/Beydoun parties entered into a "Mutual General Release and Settlement Agreement" with the Stanowskis. In that Agreement, the default and default judgment were set aside. The Agreement also contained the following relevant provisions:

1. CONSENT JUDGMENT: Upon execution of this Agreement, the Plaintiff's Agree to the execution of a Consent Judgment, which will be held, in escrow by Christ G. Natsis, attorney for Al Stanowski and Jenny Stanowski and will be filed with the Court only upon the eta (sic) default hereunder which is not timely cured in the amount of Two Hundred Forty Five Thousand ($245,000.00) Dollars, with simple interest at the rate of Seven (7%) percent per annum, provided as follows:

Defendants have agreed to accept a reduction of the Consent Judgment to One Hundred Ninety Thousand ($190,000.00) provided the Plaintiffs, JAMAL JOHN HAMOOD and CHARLENE HAMOOD or J.J. HAMOOD & ASSOCIATES do the following and are not in default:

    1.    MONTHLY PAYMENTS BY J.J. HAMOOD & ASSOCIATES or JAMAL JOHN and CHARLENE HAMOOD: Plaintiffs, JAMAL JOHN and CHARLENE HAMOOD agree to make EIGHTEEN Monthly payments of ONE THOUSAND FIVE HUNDRED ($1,500) Dollars per month on the first (1st) day of each month beginning OCTOBER 1, 2003, and the FOURTY (sic) TWO MONTHLY PAYMENTS of TWO THOUSAND ($2,000.00) Dollars on the first (1st) day of each month beginning April 1, 2005 and continuing until the end of the period or until the amount of One Hundred Ninety

3

($190,000.00) Thousand Dollars, together with simple interest at Seven (7%) percent per annum is paid in full.  In the event any payment made by Plaintiffs bounces, thereafter all future checks shall be in certified funds.

\*               \*               \*

4.      In the event Plaintiff, Jamal John Hamood and or his Associates shall receive legal fees from the law suit, Hachem V Les Stanford Chevrolet, in excess of $245,000, he shall immediately fully payoff the balance owing to the Defendants.  In the event the legal fee is less than the balance owing to the Defendants, Plaintiff, Jamal John Hamood shall immediately pay same to Defendants, reducing the balance owing by the amount paid.

\*               \*               \*

7.      <u>NONDISCHARGEABILITY</u>: **The payments hereunder shall be non dischargeable in the event of a Bankruptcy by the Plaintiffs.**[2]

It appears that the Mutual General Release and Settlement Agreement was signed only by Jamal Hamood, in his capacity as attorney for the Beydoun/Hamood plaintiffs, and by Christ Natsis, in his capacity as attorney for the Stanowskis.

Jamal Hamood never received legal fees from the lawsuit *Hachem v. Les Stanford Chevrolet*. (See Affidavit, Jamal Hamood).  On April 2, 2004, Jamal Hamood filed a bankruptcy under Chapter 7 of the Bankruptcy Code.  During his bankruptcy, Jamal Hamood agreed to entry of an order disallowing the discharge of his debt to the Stanowskis.  However, it is unclear whether an order was ever entered by the Court. (See Stanowski Exhibit C, a pleading entitled "Consent Settlement and Order Declaring Debtor to Al and Jenny Stanowski as Non-Dischargeable").  The pleading is signed by

---

[2]Again, Plaintiffs in the lawsuit were Ameena Beydoun, John Hamood, Ramona Hamood, Jamal Hamood, and Charlene Hamood.

Jamal Hamood's bankruptcy attorney, but the exhibit does not have the signature of the bankruptcy judge. Thus, it is not clear whether the agreement was ever memorialized in an order.

Jamal and Charlene Hamood failed to make the payments required by the "Mutual General Release and Settlement Agreement". That Agreement had provided that, upon default, the Stanowskis could record a Consent Judgment in the Wayne County Circuit Court. On February 7, 2005, the Wayne County Circuit Court entered the Consent Judgment. The Judgment provided, in relevant part:

> IT IS FURTHER ORDERED that the Plaintiffs, Counter Defendants, Jamal John Hamood and Charlene Hamood, his wife, shall pay to Defendants, counter plaintiffs the sum of Fifteen Thousand, Eight Hundred Seven Dollars and Thirty Cents, ($15,807.30) on or before Febraury 9, 2005 which represents the back interest (on the old Settlement Agreement) which will bring the Consent Judgment to its current status of $245,000.00 as of February 1, 2005.

The Consent Judgment also provided that Jamal and Charlene Hamood would make monthly payments on the debt and provided that, so long as Charlene and Jamal Hamood made monthly payments, the Stanowskis would not foreclose on their recorded mortgage against the Hamood's Rochester Hills home.

On April 25, 2011, Charlene Hamood filed for Chapter 7 bankruptcy. On September 22, 2011, Al and Jenny Stanowski filed an Adversary Complaint against Charlene Hamood. On October 3, 2011 and on December 20, 2011, Al and Jenny Stanowski amended their Complaint against Charlene Hamood. Each of these Complaints alleges: (1) non-dischargeability of the amount owed pursuant to the Consent Judgment under § 523(a)(2); and (2) denial of discharge under § 727(a)(5).

On June 1, 2012, Plaintiffs filed a Motion for Summary Judgment against

Defendant Charlene Hamood.  In their Motion and Brief, Plaintiffs included arguments requesting the denial of discharge under §§ 523(a)(2), 727(a)(5) and 727(a)(3). Because Plaintiffs never alleged any cause of action under § 727(a)(3) in any of their Complaints, this Court will not consider their motion for summary judgment on that ground.

On June 15, 2012, Defendant Charlene Hamood filed a response to Plaintiffs' Motion for Summary Judgment and filed a counter-motion for summary judgment.

On June 26, 2012, this Court denied Plaintiffs' Motion for Summary Judgment and allowed Plaintiff time to respond to Defendant's counter-motion for summary judgment.

On July 9, 2012, Plaintiffs filed a response and brief in opposition to Debtor's counter-motion for summary judgment.  On that same day, Defendant filed a reply to Plaintiffs' response.

II.

STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056 (Rule 56 applies in adversary proceedings).  The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a

6

party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant has an initial burden of showing "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. 317, 323. Once the movant meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). To demonstrate a genuine issue, the non-movant must present sufficient evidence upon which a jury could reasonably find for the non-movant; a "scintilla of evidence" is insufficient. *Liberty Lobby*, 477 U.S. at 252. The court must believe the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *Liberty Lobby*, 477 U.S. at 255.


III.

<u>JURISDICTION</u>

Bankruptcy courts have jurisdiction over all cases under Title 11 and all core proceedings arising under Title 11, or arising in a case under Title 11. 28 U.S.C. §§1334 & 157. Core proceedings include proceedings to determine dischargeability. *Id.* § 157(b)(2)(I). As this is a proceeding to determine dischargeability, this is a core proceeding under 28 U.S.C. § 157(b). Thus, this Court has jurisdiction over this matter.


IV.

7

<u>ANALYSIS</u>

**A.    This Court finds that, as a matter of law, the debt owed by Charlene Hamood to the Stanowskis arising out of the Consent Judgment entered on February 7, 2005 is dischargeable under both § 523(a)(2)(A) and § 523(a)(2)(B).**

Section 523(a)(2) provides for an exception to discharge for debts for money obtained by false pretenses, a false representation, or actual fraud.  Specifically, § 523(a)(2) provides:

> (a) A discharge under section 727 . . .  does not discharge an individual debtor from any debt –
>
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by –
>
>> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition . . . .
>>
>> (B) use of a statement in writing –
>>
>>> (i) that is materially false;
>>> (ii) respecting the debtor's or an insider's financial condition;
>>>
>>> (iii) on which the creditor to whom the debtor is liable for such money, property, services or credit reasonably relied; and
>>>
>>> (iv) that the debtor caused to be made or published with intent to deceive;
>>
>> *        *        *

The purpose of § 523(a)(2) is to prevent debtors from retaining the benefits of property obtained through fraud.  *In re Omegas Group, Inc.*, 16 F.3d 1443, 1451 (6th Cir. 1994). Plaintiff must show each element by a preponderance of the evidence.  *In re Rembert*, 141 F.3d 277, 281 (6th Cir. 1998).

**1.    § 523(a)(2)(A):**

8

To prevail on a claim under § 523(a)(2)(A), a plaintiff must show that:

(1) [T]he debtor obtained money through a material misrepresentation that at the time the debtor knew was false or that he made with reckless disregard for the truth; (2) the debtor intended to deceive; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of loss.

*In re Rembert*, 141 F.3d 277, 280 (6th Cir. 1998)(emphasis added). *See also, Digital Commerce Ltd. v. Sullivan (In re Sullivan)*, 305 B.R. 809, 823 (W.D. Mich. 2004).

This Court finds that, in this case, none of the four elements of § 523(a)(2)(A) have been met. First, this Court finds that Defendant Charlene Hamood did not obtain money through a material misrepresentation. Charlene Hamood's liabilty to Plaintiffs stems from two documents: (1) a promissory note signed by Charlene Hamood on February 2, 1995 and a Consent Judgment entered against Jamal and Charlene Hamood on February 7, 2005. Charlene Hamood's signature on the promissory note was not a misrepresentation; she and her husband agreed to make payments on a note. Repayment of the note was secured by a second mortgage on the Hamood residence granted by the Hamoods to the Stanowskis. This was a consensual agreement for which consideration was given and, as a matter of law, the promissory note was NOT a misrepresentation to induce the Stanowskis to do anything. The promissory note and the second mortgage were simply a substitution of collateral which was fully agreed to by the Stanowskis.

The Consent Judgment entered on February 7, 2005 is also not a material misstatement; it is a judgment memorializing a consent agreement reached by the parties in February 2004. A party's failure to pay, in and of itself, does not make the original promise to pay a non-dischargeable obligation. The plaintiff in a non-

9

dischargeability action must also show that the defendant knew at the time the promissory note or agreement to pay was made, that he had no intention of paying, and that he made the promise with the intent to trick the plaintiff into doing something he would not have done otherwise.  As noted above, in this case, the original transfer between Plaintiffs and Defendant Charlene Hamood was a mutually agreed upon transaction.  Defendant and her husband signed a note, and Plaintiffs received a mortgage and a stream of payments on the note.  There are no facts which support a finding that Defendant Charlene Hamood made a material misrepresentation in this case.

The only other material misrepresentation alleged by Plaintiff is a paragraph in the Mutual General Release and Settlement Agreement dated February 4, 2004.  The Mutual Release contains a provision which states:

> 4.     In the event Plaintiff, Jamal John Hamood and or his Associates
> shall receive legal fees from the law suit, Hachem V Les Stanford
> Chevrolet, in excess of $245,000, he shall immediately fully payoff
> the balance owing to the Defendants.  In the event the legal fee is
> less than the balance owing to the Defendants, Plaintiff, Jamal
> John Hamood shall immediately pay same to Defendants, reducing
> the balance owing by the amount paid.

Plaintiffs argue in their Response to Defendant's Counter-Motion for Summary Judgment that there is a material misrepresentation because the case referenced in the above paragraph does not exist.  Due to a typographical error in the spelling of the caption, "Hachem" should have been spelled "Hashem", Plaintiffs were unable to locate the lawsuit and now claim that Defendant Charlene Hamood misrepresented a potential source of payment of the debt owed to Plaintiffs.  Defendant notes that the correct case name for the case referred to in the Mutual Release is  *Hashem v. Les Stanford Chevrolet*, 697 N.W.2d 558 (Mich. Ct. App. 2005).  Since the case referred to in the

10

Mutual Release exists, Defendant Charlene Hamood did not make a misrepresentation in allowing her attorney to sign a document which provided that payment of the debt owed to Plaintiffs could be made by a prospective fee owed to Jamal Hamood.

The Court finds that Plaintiffs have failed to produce any facts or evidence demonstrating that Defendant Charlene Hamood made a material misrepresentation to Plaintiff.

This Court need not further analyze the elements of § 523(a)(2)(A) because this Court can find neither a misrepresentation made by Charlene Hamood nor that Charlene Hamood deliberately misrepresented something to induce the Plaintiff to enter into the 1995 promissory note or the Consent Judgment. Accordingly, this Court DENIES Plaintiffs' Motion for Summary Judgment pursuant to 11 U.S.C. § 523(a)(2)(A) and GRANTS Defendant's Motion for Summary Judgment.


### 2. § 523(a)(2)(B)

Section 523(a)(2)(B) excepts from discharge debts incurred by use of a false statement in writing. To prevail on a § 523(a)(2)(B) claim, a plaintiff must establish the following elements regarding the writing:

> (i) that the writing is materially false; (ii) respecting the debtor's or an insider's financial condition; (iii) on which the creditor to whom the debtor is liable for such money, property services, or credit reasonably relied; and (iv) that the debtor caused to be made or published with the intent to deceive.

*See Martin v. Bank of Germantown (In re Martin)*, 761 F.2d 1163, 1166 (6th Cir. 1985). A document that is "written, signed, adopted or used by the debtor" qualifies as a statement in writing under this section. *Insouth Bank v. Michael (In re Michael)*, 265

B.R. 593, 598 (Bankr. W.D. Tenn. 2001).

Under the first element, a written statement is materially false if the information in it "offers a substantially untruthful picture of the financial condition of the debtor that affects the creditor's decision to extend credit. *Id.*, *citing In re Bogstad*, 779 F.2d 370,375 (7th Cir. 1985). The second element requires that the statement refer to the debtor's financial condition.

The third element requires the plaintiff/creditor to establish reasonable reliance on the written statement. Reasonable reliance is not defined in the Bankruptcy Code. Case law generally holds that it is determined objectively based on the totality of the circumstances. *In re Michael,* 265 B.R. at 598.

> The determination of the reasonableness of the creditor's reliance on a false statement in writing is judged by utilizing such factors as:
> whether there had been previous business dealings between the debtor and the creditor;
> whether there were any warnings that would alert a reasonably prudent person to the debtor's misrepresentations;
> whether a minimal investigation would have uncovered the inaccuracies in the debtor's financial statements; and
> the creditor's standard practices in evaluating creditworthiness and the standards or customs of the creditor's industry in evaluating creditworthiness.

*Id.*

The fourth element requires that the debtor make or publish the statement with "intent to deceive."

> The standard. . . is that if the debtor either intended to deceive the Bank or acted with gross recklessness, full discharge will be denied. . . . That is, the debtor must have been under some duty to provide the creditor with his financial statement; but full discharge may be disallowed if the debtor either intended the statement to be false, or the statement was grossly reckless as to its truth.

*Martin v. Bank of Germantown (In re Martin)*, 761 F.2d 1163, 1166 (6th Cir.

1985)(citations omitted).

Case law makes clear that a cause of action under § 523(a)(2)(B) exists only if Debtor has provided the creditor with a statement respecting the debtor's financial condition and the creditor has relied on that statement. There is no allegation in the Complaint that Charlene Hamood ever was asked to provide, or that she ever did provide, a statement respecting her or her husband's financial condition. The only document ever signed by Charlene Hamood was the promissory note in 1995. Charlene Hamood's signature on a promissory note is NOT a statement respecting her or her husband's financial condition. For this reason, this Court DENIES Plaintiffs' Motion for Summary Judgment pursuant to 11 U.S.C. § 523(a)(2)(B) and GRANTS Defendant's Motion for Summary Judgment.

**B.    Statement in Mutual Release that Liability is Non-Dischargeable in Bankrutpcy is Unenforceable.**

In this case, Plaintiffs also argue that Charlene Hamood's debt to them is non-dischargeable both because Charlene Hamood agreed to the non-dischargeability of her debt to the Stanowskis in the Mutual General Release and Settlement Agreement and because she should be bound by her husband's agreement in *his bankruptcy* that his debt to the Stanowskis is non-dischargeable.

The Sixth Circuit has held that waivers of the discharge contained in prepetition stipulations violate public policy and are unenforceable. There are two exception to this rule, those being in the case of reaffirmation agreements and court approved post-petition waivers of a discharge. Neither exception applies in this case.

13

The Sixth Circuit, in the unpublished case of *Lichtenstein v. Barbanel*, 161 Fed. Appx. 461, 468 (6th Cir. 2005), states:

> A pre-petition stipulation in a state-court action waiving a debtor's right to obtain a discharge of a specific debt in a future bankruptcy case is void because it offends the public policy of promoting a fresh start for individual debtors. Because it is executed before bankruptcy proceedings begin and is not approved by a bankruptcy court, such pre-petition waivers of discharge do not satisfy the statutory requirements for a waiver of discharge under § 727(a)(10).

Other courts have also held that a prepetition waiver of discharge entered into in a nonbankruptcy case is unenforceable. *See, e.g., In re Bachinski,* 393 B.R. 522, 535 (Bankr. S.D. Ohio 2008); *Klingman v. Levinson*, 831 F.2d 1292, 1296 n. 3 (7th Cir.1987) ("For public policy reasons, a debtor may not contract away the right to a discharge in bankruptcy."); *Hayhole v. Cole*, 226 B.R. 647, 653 (9th Cir. BAP 1998) ("[A] state court stipulated judgment where the debtor waives his right to discharge *534 is unenforceable as against public policy."); *Saler v. Saler (In re Saler)*, 205 B.R. 737, 745 (Bankr.E.D.Pa.1997) ("The public policy with regard to the provision of a 'fresh start' for debtors following bankruptcy cannot be precluded by a state court judgment....").

This Court finds that the provision in the Mutual General Release and Settlement Agreement which attempts to waive the dischargeability of the debt owed to Plaintiffs is unenforceable. The Mutual General Release and Settlement Agreement, therefore, does not establish as a matter of law that Defendant Charlene Hamood's debt to Plaintiffs is nondischargeable.

**C.     This Court finds that, as a matter of law, Defendant is entitled to her discharge under 11 U.S.C. § 727(a)(5).**

Plaintiffs allege that Defendant Charlene Hamood should be denied a discharge under 11 U.S.C. § 727(a)(5).  Section 727(a)(5) denies debtor a discharge where he has "has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities[.]"

> There are two stages of proof with respect to § 727(a)(5). *Caterpillar, Inc. v. Gonzalez (In re Gonzalez)*, 302 B.R. 745, 754-55 (Bankr.S.D.Fla.2003). Under this section, the party objecting to discharge has the initial burden of proving substantial and identifiable assets that the debtor owned at a time not too far removed from the bankruptcy that are no longer available for creditors. *Id.; see McGowan v. Beausoleil (In re Beausoleil)*, 142 B.R. 31, 37 (Bankr.D.R.I.1992); *[Clean Cut Tree Service Inc. v. Costello (In re] Costello*, 299 B.R. [882] at 902 [Bankr. N.D. Ill. 2003]. The burden then shifts to the debtor to satisfactorily explain the loss or deficiency of assets. *Id*. The debtor's explanation 'must be reasonable and credible so as to satisfy the court that the creditors have no cause to wonder where the assets went.' *Union Bank of the Middle East Ltd v. Farouki (In re Farouki)*, 133 B.R. 769, 777 (Bankr. E.D.Va.1991); *see also Beneficial Mortgage Co. v. Craig (In re Craig,)* 140 B.R. 454, 459 (Bankr.N.D.Ohio 1992). 'To be satisfactory, the explanation must demonstrate the debtor has exhibited good faith in conducting his affairs and explaining the loss of assets.' *Costello*, 299 B.R. at 901 *840 *(quoting Bay State Milling Co. v. Martin (In re Martin)*, 141 B.R. 986, 999(Bankr.N.D.Ill.1992)).

*Strzesynski v. Devaul (In re Devaul)*, 318 B.R. 824, 839-40 (Bankr. N.D. Ohio 2004).

With respect to the initial burden, "there are two conditions needed for a creditor or trustee to show a loss or deficiency of a prepetition asset. '(1) the debtor had a cognizable ownership interest in specific funds(s) or identifiable piece of property; and (2) that such an interest existed at a time not to far removed from when the petition was filed.' *Devaul*, 318 B.R. at 831, *quoting Baker v. Reed (In re Reed)*, 310 B.R.  363, 369 (Bankr. N.D. Ohio 2004).

In this case, Plaintiffs argue that Defendant Charlene Hamood failed to explain

the loss of resources that Plaintiff believes were available to satisfy Charlene Hamood's obligation on the promissory note signed in February 1995 and the Mutual General Release and Settlement Agreement signed on February 4, 2004.

This Court finds that Plaintiffs have failed to meet their initial burden of proof under § 727(a)(5). Plaintiff does not identify what assets they believe Charlene Hamood has dissipated, nor do they reference any activity more recent than February 2005. No one disputes that Charlene Hamood has always been a homemaker with limited personal income. Debtor's Schedule I shows her income as $0 and her non-filing spouse's income as $2,186.67 per month for the first six months of 2011. Because Plaintiffs have failed to state any facts supporting a cause of action under §727(a)(5), this Court DENIES Plaintiffs' Motion for Summary Judgment pursuant to 11 U.S.C. § 727(a)(5) and GRANTS Defendant's Motion for Summary Judgment.


V.

<u>CONCLUSION</u>

For the reasons set forth in this Opinion, this Court DENIES Plaintiffs' Motion for Summary Judgment and GRANTS Defendant's Counter-Motion for Summary Judgment and DISMISSES Plaintiff's Complaint.


Signed on July 24, 2012

<pre>
              /s/  Marci  B.  McIvor
            Marci  B.  McIvor
            United  States  Bankruptcy  Judge
</pre>

16

17